Case number 10-2706, Sarah Corwin v. Scott Corwin. Okay, on behalf of the appellant, counsel, you can step forward and begin your argument, and you can wait to introduce yourself when you step forward. Thank you, Your Honor. Thomas Burns for Sarah Corwin, now known as Sarah Hastings. Excuse me. I would like to reserve five minutes. Sure. I'll let him tell you most of it. This is a fairly straightforward case. Yes, Your Honor, I believe it is a straightforward case. I've spent the last week reacquainting myself with briefs, the facts of the law, and the... Are you counsel from Utah or from... I am counsel from Utah, Your Honor. Okay, that's what I thought. Go ahead. I have to admit the Illinois statutory scheme is a bit confusing to me. It's different than what I've dealt with before. I've tried cases in Utah and in California, both of which have different schemes than Illinois. However, I do understand Illinois' scheme, I believe. Fundamentally, I think that I've presented two issues. The first one I'm not going to waste the court's time with. I don't think it's really something that's going to get me very far in terms of whether or not the trial court properly found that there were substantial material changes sufficient to warrant... Oh, you just took away some of my questions because, in fact, that was one of my inquiries. Under Illinois law, in fact, there's a case that neither side cited, but it's Blister v. Blister. I'm sure the Illinois counsel is aware of it because it's an Illinois Supreme Court case that says that when you're talking about child support, child support can never be done away with through an agreement between the parties, between the parents. It has to be approved, any such arrangement has to be approved by the court. And although the court did, in fact, approve such an arrangement, the court might have gotten it wrong last time. And I think it's well within the discretion of the current circuit court to say child support is needed. You're all right. As I said, I'm not going to waste the court's time on that. I think that there's at least a substantial likelihood the court didn't support its determination of a substantial material change in circumstances. But that was my question because I'm not sure we really need one, but if we do need one, we're going to give as much deference as possible to the circuit court that found one. Which is why I'm stepping away from that issue, Your Honor. I understand it's an abuse of discretion and the trial court's going to be given substantial latitude. The support of the child is very important. And frankly, at the end of the day, my client is not disinterested in supporting her child. That's not her position here. If there is a need for child support, she is willing to pay. The problem here, Your Honor, is pay what? The trial court, in an abundance of creativity, took a case from the Supreme Court in 2004, in New Rogers, and applied that to this case in attempting to pull my client's current husband, not the father of the minor child, his income into this discussion. Now, the reality of it... What income was that? That's a good question, Your Honor. My understanding, and again, I do apologize for... There may be some particular facts that I'm not as familiar with as I should be. I'm not trial counsel in this case. One of my partners is trial counsel who's been in court with Mr. Wittenberg. I have not been in court. I have read the transcripts, but as the court is fully aware, the transcript does not necessarily provide all of the import necessary to give the information that's needed. But my understanding of that is that Mr. Wittenberg presented to the court what appears to be something from a 10-K or a 10-Q from my client's employer, which purports to present some income information about my client's husband's income. Substantial income. There's no doubt my client's husband makes a substantial amount of money, Your Honor. It's not what the 10-Q purports, but that's really neither here nor there. Nor is that important. It could be $10,000. It could be a million dollars. That really shouldn't enter into the discussion at all. The question is whether or not it's appropriate under Illinois law for the trial court to reach out to a third party to say, I'm going to impute the income of this third party onto the parent and force this parent then to pay an income that the parent is simply not capable of earning. The reality here is that there hasn't been an attempt, not even once in this case, to impute actual income. What's wrong with the arrangement that the trial court arrived at? That it's really just $1,000 a month, and that the other $2,000 can be used by the mother to travel back and forth? Your Honor, fundamentally I disagree with that. Frankly, it's a $3,000 child support order that can be offset by travel costs. It's not a $1,000 child support order that then requires Ms. Hastings to spend $2,000 on trial or affords her $2,000 to spend on trial. Rather, it's a $3,000 child support order. Let me ask you this. What happens if the daughter says, you know what, Dad, I need a new gown, and if I can encourage my mom not to show up this month, will you buy me that gown? And that is a problem that we've certainly encountered in the inverse, Your Honor. The fact of the matter is, if travel is in fact to be considered not an offset, but more of an incentive, that $2,000 is to be considered an incentive for Ms. Hastings to come and visit, we've had substantial difficulties entering into any sort of visitation orders. There have been multiple battles back and forth trying to get visitation orders in place, and we still have no permanent visitation order in place. Every individual visit is being combated. And Mr. Corwin has an incentive to combat every individual visitation order because at the end of the day, Your Honor, if there is no visitation in a month, he gets $3,000. And so if he spends $1,000 in attorney fees fighting a visitation order, then he gets $2,000 in his pocket. That's simply not appropriate in terms of the way that child support is looked at in the state of Illinois or anywhere else that I'm aware of. Well, let me ask you this. Since you say you're aware of both support proceedings and marriage proceedings, dissolution proceedings in both Utah and California, are you acquainted with a case where incentives have been used in the manner that were used here? I know of no such case in either state, Your Honor. Frankly, in the state of Utah, the state has created a guideline. You know, I think I may have violated the rule. I can't ask you to cite any case that's not already listed in your brief. I can't cite you to one, Your Honor, because in either California, both California and Utah have effectively a very firmly established guideline procedure. In Utah, it's a chart. In California, it's a calculation. But those are firmly set, and they must be applied. So why doesn't Rogers apply? Pardon? Why doesn't Rogers apply to what the circuit court did in this case? Because if you look at Rogers, the facts of Rogers are very clear. In Rogers, the father, who was the paying parent, the non-custodial parent, was receiving actual amounts in his pocket, in his bank account, from his parents. Now, he purported those to be loans, but it was $46,000 a year of unearned— Four years. Pardon me, ma'am? Four years, then years. Yes, for years and years and years. It was earned income that went into his pocket, Your Honor. In this case, Ms. Hastings, they don't share any joint accounts. They have no joint bank accounts. They have no shared credit accounts. They have no shared investment accounts. Ms. Hastings is not on the title of any of the vehicles. And, in fact, the point— You just indicated that she has no reservations about paying child support, so where would that child support payment come from if she's not receiving any income? And how is a judge to calculate that, what that amount should be? I think that Illinois has set up a relatively standard procedure for establishing the imputation of income, Your Honor. My client has a certain level of education. I believe she has a high school diploma. She's got a job history. She's done clerical work and some other work. You can utilize all of that to establish what she is capable of earning very easily. And, in fact, if there were ever an attempt made, I believe my client would agree to some imputation of some reasonable amount that she would be capable of earning because I can't guarantee any more than you can, Your Honor, that my client is going to be married to Mr. Hastings next year. But that's the argument that was made, I think, in Rogers, and the Supreme Court shot it down saying change of circumstances can arise at any moment. And that's what courts are there for, that you go into the court and indicate a change of circumstances and the child support obligation is reduced accordingly. Absolutely, Your Honor. And if she were receiving dollars in hand, Rogers would apply. If Mr. Hastings were giving her money, absolutely, on a monthly basis, saying here's $2,000 a month, honey, this is your money to do with as you will, that's her income. There's no question about that, Your Honor. I wouldn't be standing here in front of you if that was the case, if that's what we're asserting. But what the trial court did was impute $180,000 in net income to my client, who is unemployed, a mother of three children, two of whom are younger than two years of age and live with her. She simply doesn't have the capacity to earn $180,000, Your Honor. She just does not. Do you have a position as to what you think the reasonable amount of child support would be for your client to pay or is it your position that this should be sent back for a hearing with regard to the appropriate imputation of income? Well, it's my understanding, under Illinois law, that there have to be findings made concerning that. But my client has offered, as I recall, and I may be incorrect and I don't. Well, if it's not in the record, we don't really want to talk about it. I believe my client's offered up to $1,000 a month just to try to resolve this issue. So we wouldn't have to do this. And, in fact, that's what the, at least the minimum, that's what the trial judge said, if she traveled every month. If she traveled every month and Mr. Corwin was willing to cooperate with the schedule, there are plenty of issues there, Your Honor. All right, Mr. Burns, I think we'll give you five minutes for rebuttal. Thank you, Your Honor. Thank you, Your Honors. My name is Steven Wittenberg and I'm representing Mr. Corwin. All right, Mr. Wittenberg, I think you've heard our concerns. I have, Judge, and I'm ready to address them. First, I think it's important to point out that I'm not taking this in any particular order other than the ones that was brought up during counsel's portion. The testimony was, although Mrs. Hastings has her own checking account, the source of deposits into that checking account were her husband's income. So she was receiving funds from him, according to the record. How much? Well, we don't know because she was unable to testify. What did the judge rely on? That's easy. Here's what the judge relied on. The judge relied on her own affidavit and testimony that she was spending in excess of $4,500 a month on travel expenses during that period of time, which were solely attributable to her daughter. The judge relied on the fact that her husband could have been. Do you think the husband can say, I'm willing to give you up to $4,500 a month to travel to visit your other daughter, but I'm not willing to give you $3,000 to give to your ex-husband to support that very same daughter? That's a great question. And the answer is that's the same problem you have in every Rogers case where a parent gives money. If it's a Rogers case? Yes. This is unequivocally a Rogers case, and here's why. With respect to Rogers, the point is this. What are the resources, the gifts, loans, whatever resources are available to that parent? And the only thing we can use to determine that is the past. We have no way of having a crystal ball looking into the future. With that respect, you look at a case like Rogers or a case like this, and you say, what has been the resources? What has been the past practice that this person has received over a period of time? This woman didn't just get married. She's been married to this man for an extended period of time. She's received these resources year after year. Not only $4,500 a month to travel expense, but a quarter of a million dollars in legal. We understand all that. Let's say she lived in Indiana and was able to travel by car. Does that mean that simply because she had no expenses to travel, that the same arrangement couldn't have been made? I mean, it's going to be $1,000 in that case, and it's going to be $3,000 as the circuit court did in this case? Judge, that's a different fact pattern. You also have to look, and here's why. So it's not a question of income, because assuming the income was the same in Indiana, assuming the current husband made the same amount of money, and assuming that that husband put into her account $4,500 every month, why should that arrangement be proper in this case? It's not only $4,500. It's also the quarter of a million in fees he paid for her. It's also all the other expenses. $4,500 is just a small portion. That's what husbands and wives do. I agree. And one of the things that we have to rely on, and this is what Rogers says, this is what our Illinois Supreme Court tells us, is that you have to look at those things when determining what somebody's resources are for the purposes of paying child support. Well, first of all, you have to acknowledge that Rogers did not involve a husband and wife. It involved a parent and a child. And it involved what kind of exchange was involved in Rogers? The court was unable to determine whether it was gifts or wallets, depending on who you believe was either gifts or wallets. No, they said it was gifts. But was it money? The resolution was that it was gifts. The resolution. Well, in this case, there was no evidence that these were wallets. It was gifts, too. So I would say there was analogous to this case. Let's say that $4,500 was deposited in her account every month by the husband. If that were treated as her net income, what would be the child support based on that amount of money? But that's not the amount of money that was deposited. It was, in addition, a quarter of a million dollars in fees. What do we know? We know an affidavit that was filed. Through her account? We know there was an affidavit filed by her counsel telling us that her husband paid $250,000 over a three-year period. Through her account or his account? What? Through her account or his account? Well, isn't that a distinction without a difference? I thought that was the basis of your distinction, that if it goes into her account. No, that's what the court raised. My distinction is. Well, I thought you were trying to make a comparison to what she was receiving and gifts. Gifts go directly to the individual. Well, I would disagree. If somebody buys you a car versus giving you a check, if they buy you a new Mercedes, I don't think there's a difference between any of them. Do you think that the Illinois courts are prepared to say that if a parent buys a son or a daughter a car, that car can be used to calculate child support? One of the unique circumstances in Rogers and in this case was the fact that the parent who was supposed to be paying support really had no other significant source of income. So I think it's one thing when the Illinois Supreme Court looks at it and says, it's one thing if Mrs. Coyle was out earning $100,000 a year. Then there would be other issues involved. But I think what happens is when the court's left under 505H without other ways of viewing what necessarily this person's income is, then they're allowed to go to that step. So I think what we've done is we've effectively said, now we've moved to 505H. And that's what Rogers comes into play. Let me ask you this. Regarding the amount of, what was the child support order, how was the child support order entered? Did it say $3,000 and then a reduction by travel expenses? What it says, what the order, by recollection, said was it's $1,000 a month plus up to $2,000 more. She has the absolute right to use those funds to travel and see her child. The evidence was she was traveling 24 to 25 times a year to see her child. She then started traveling four to five times a year. It was contemplated she was spending $4,500 a month on that travel and then just stopped. And why shouldn't that be to her benefit as opposed to some sort of use against? It's not a question of that. It's not meant as a – The question is why should the circuit court have any discretion to take that into account in setting child support? The question is in terms of, I think what the court was saying is that that money was being utilized pursuant to an order that was entered in 2006, which was the July 27, 2006 order, where mom had the affirmative obligation to pay 100% of those travel expenses, which by her own admission were $4,500 a month. So you were relying on that order to that extent, but your client did not want to abide by that order to the other extent. You asked that question because if you read the order, and this is what the court said in the transcript, is that that order didn't say what they're suggesting it said. That order said that the court shall consider certain things, that the parties asked the court to consider. The court in its own ruling, as well as in that order, stated it's not – and in the transcript stated it doesn't necessarily think it was bound by that order. And I agree it shouldn't be bound by that order. So we're talking about your client seeking to bind her by that order, and yet not being bound by that order himself. What I'm saying is the court relied on that order. I'm not talking about my client, I'm talking about the court. So here's the question. Where's the authority that says that based on that order, the circuit court can consider that those funds expended for travel as part of her net income to establish child support? Under 505H and Rogers, I think the court has an absolute right to consider those as available resources. And by the way, counsel keeps bringing up the issue, and this is important that I respond to this, that we're looking at Mr. Hastings. In fact, we're using his income to determine what she should pay. And that's not what we're doing at all. What we're saying is – Well, let me ask you this. Let me ask you this. What kind of income would she have to be making to be obligated to pay $3,000 a month? Well, that's easy. You would simply multiply that. That would be $15,000 a month. And that would be? That would be to do guidelines. That would be net income, right? That's correct. And how much is that annually? That's assuming you're in guidelines. You have to remember, you have to go back again to the history of the case. Are you saying that this is above guidelines or below guidelines? I'm saying that it's a determination under 505H, which isn't the guideline order to begin with. Under 505H, that's not necessarily a guideline order. The court would not, without – Isn't it a baseline, though, that we sort of follow? Of course it is. But once we can't determine somebody's income under 505H, we're forced to do this analysis. So do we say anything goes? Of course not. And so what would be the $3,000 a month? Well, what would she be earning gross or net? $380,000 a year. It's easy. If you're using guidelines, I guess my point is that's not part of the analysis under 505H. All right. But it gives you a frame of reference, doesn't it? Of course it gives you a frame of reference. All right. So then answer the question. Okay. What does that figure represent in terms of salary? It would be $180,000 a year net. That's easy, I think. And gross? Right. I'm sorry, what? And gross, what? Well, it depends on the state. Well, it depends on the state. Well, sure. Aren't you imputing a $300,000 salary to someone who doesn't even have a college education? No. What you're doing instead is you're saying that the resources available to her – From her husband. Well, the question was – Okay. The resources currently available to her at the time of the hearing, according to the evidence that came in under Rogers, the court made a finding that based on what she had at her disposal and was using, meaning the $4,500, the quarter of a million in fees, everything else that went for her benefit, not like a mortgage payment on a residence she lived in, not like the utilities on the residence she lived in, but these are funds directly used for her sole benefit. Within her use were those funds that the court considered. And I think what it did is it went back to that 2006 order and said this was money she was spending already, $4,500 a month on the child. So why shouldn't that $4,500 be the net income as opposed to the – Because it was already being spent on the child. It's not what her income was. It's the funds that were already being spent on the child. But if you were giving the child $1,000 of spending money every month, do you want that to be included as well? Absolutely not, because if you look back at the 2006 order, that was mom's obligation. All you've done is shift that money. The money was already being used for the child. Let me ask you this final question. Let me ask you this final question regarding what I see as a built-in incentive in the way the order was constructed. I understand that the judge thought it gave an incentive to have visitation, but couldn't it give an incentive to stop visitation in order to get that additional $2,000 a month? I heard you ask how, so that's a great question. The answer is I assume we have to make the assumption that people follow court orders. So if the incentive is that Mr. Corwin is going to violate court orders in order to get his support, I don't think the court would look at that kindly. I understand, and that's a legitimate response. But let me ask you a more fundamental question. Why should the courts be involved in setting those sort of incentives at all? If you assume that the order was only entered as an incentive, then that's a good question. Give me another purpose. The other purpose for the order is it was a way to go back and look at the original order that was entered in 2006, look at what she was actually spending and say, what we're going to do is we're going to try to keep that framework in place. Now that you're not using the funds for that, let's use it for the fact that your daughter is now here incurring more expenses and there's other things going on. And if you want to continue with that framework, this original agreement, and use it for that purpose, then continue to do that. But you can't have it both ways. I did misspeak. The last question I have is what's your preferred remedy here if things go against you? Do we set child support here or do we send it back? I think it has to go back to the trial court. But do we give guidelines as to what that? The question would, of course, be, and I'm not sure how the court could do that, because one of the things, I think the framework would have to be what's the procedure, not exactly what you would do for this specific case. All right. I understand. Thank you very much. Thank you, Judge. A brief rebuttal, counsel? No obligation? Thank you. Thank you very much, Your Honor. Thank you. Appreciate it. The court requested a language from the order that sets the child support amount that's being challenged now. That language is specifically paragraph 1, retroactive to January 1, 2010. Sarah Hastings shall pay Scott Corwin, as in for child support, for the benefit of Trinity Corwin, the sum of $3,000. And that just raises the other question I meant to ask, counsel, is should we decide that that order was not a valid order under Illinois law? Do we void it to the date of its entry, or do we say simply from this point on? Well, frankly, Your Honor, my preference would be to void it from that date. I'm sure that's your preference, but I'm asking you. I think under Illinois law it would be appropriate in that it was an order that was void as of its entry and that it is not supported evidentially. It's also been challenged on a motion for reconsideration that was denied. So I think that from the outset, Ms. Hastings did everything in her power to resist this order and to try to get something reasonable entered. This is simply not reasonable. There was a mention of the deposits in Ms. Hastings' checking account. There's no evidence in the record anywhere about how much goes into that checking account. There was evidence about how much was in it at the time of her affidavit, and it was less than $700. But in 2006, she did say that I've been spending $4,500 a month to travel, and therefore... I don't recall that. Or something to that extent, which supported the waiver of child support entirely, because she was saying I'm spending a lot of money traveling here, and I'm sure you want me to travel here, and I've been doing it quite frequently throughout the year. Let's agree that I don't pay child support, and custody remains with the daughter. Remains with the father. That's not my recollection of your testimony, Your Honor. It's certainly not in the order or the stipulation between the parties. There's a mention in the stipulation that the party traveling will bear their own costs. But there's no mention of amounts. Frankly, I think, Your Honor, you've put your finger on the pulse of all of this. If, indeed, the court relied on some sort of statement from Ms. Hastings that she was spending $4,500 a month in travel costs, that's a simple way for the court to establish a net income for her. If that's what she had available to her, that's approximately $55,000. Twenty percent of that would be an appropriate means. Well, counsel wouldn't want us to forget about that quarter of a million dollars that was... Counsel wouldn't want us to forget about that, but that's over the course of six years, which was failed to have been mentioned. If, indeed, it's appropriate, that's a six-year expenditure for attorney fees, not a single-year expenditure, Your Honor. You know, and to some extent, this problem was brought on by the failure to provide financial information that Ms. Hastings and or her husband could have provided. Mrs. Hastings did provide financial information. Frankly, Mr. Hastings isn't subject to the jurisdiction of this court, Your Honor. He's a third-party witness who's out of state. That's being contested in the trial court, but he's not a resident of Illinois. The court had no power over Mr. Hastings, none. Ms. Hastings has provided financial information. She did it in Form 13.3. She's testified. She's not a very sophisticated witness, Your Honor. I hate to put my client in that particular light, which she's not. So the reality is we would ask that you vacate this order and send it back to the trial court for determination of what a proper amount of child support would be because my client's not opposed to paying child support, Your Honor. Good enough. Thank you, Your Honor. All right, the case will be taken under advisement.